[NOT FOR PUBLICATION] [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 96-1770

MARIO GARCIA-QUINTERO, ET AL.,
Plaintiffs, Appellees,

v.

COMMONWEALTH OF PUERTO RICO, ET AL.,
Defendants, Appellants.



APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO



[Hon. Salvador E. Casellas, U.S. District Judge] 



Before

Selya, Circuit Judge, 
Coffin, Senior Circuit Judge, 
and Stahl, Circuit Judge. 



Carlos Lugo-Fiol, Solicitor General, Edda Serrano-Blasini, 
Deputy Solicitor General, and Edgardo Rodriguez-Quilichini, 
Assistant Solicitor General, on brief for appellants.
David P. Freedman, Mario J. Pab n and O'Neill & Borges on 
brief for appellee First National Bank of Boston.
Jose M. Mu oz-Silva, Charles A. Cuprill-Hernandez, Carlos A. 
Surillo Pumarada and Charles A. Cuprill-Hernandez Law Offices on 
various briefs for appellee Northwestern Trading Co.



MARCH 11, 1997



Per Curiam. This case had its genesis in racketeering Per Curiam. 

charges filed by the Puerto Rico Department of Justice (PR-DOJ)

against, inter alia, Delta Petroleum (PR), Ltd., Delta's 

president, (Mario O. Garcia-Quintero), and Northwestern Trading

Co. Coincident with the filing of those charges, PR-DOJ seized,

without prior judicial authorization, two bank accounts

maintained by Delta. One such account was held by Banco Central

Hispa o for the benefit of First National Bank of Boston (Bank of

Boston). The second was held directly by Bank of Boston.

Garcia-Quintero, Bank of Boston, and Northwestern

Trading pursued various avenues of relief. During this time

frame, however, Delta became the subject of Chapter 11

proceedings in the bankruptcy court; a trustee was appointed; and

Bank of Boston opted to remove an earlier-filed action from the

commonwealth courts to the bankruptcy court. In due season, Bank

of Boston cross-claimed against PR-DOJ, alleging that the

aforementioned seizures were illegal and should be nullified.1

After considerable procedural skirmishing, the district

court withdrew its earlier reference to the bankruptcy court and

assumed jurisdiction over the adversary proceeding. Both Bank of

Boston and Northwestern Trading then moved for summary judgment.

PR-DOJ did not file an opposition to either motion. By order

dated August 9, 1995, the district court granted the motions.

 

1Throughout this opinion, we use "PR-DOJ" as a shorthand
reference for all appellants (who include not only PR-DOJ but
also the Commonwealth of Puerto Rico and divers officers and
agents of the Commonwealth).

2

PR-DOJ moved for reconsideration, Fed. R. Civ. P. 59(e), but the

court, by order dated February 5, 1996, refused to budge. PR-DOJ

now appeals. We summarily affirm.

The district court has written two orders explaining

its reasoning, and we see scant need to wax longiloquent. See 

Lawton v. State Mut. Life Assurance Co. of Am., 101 F.3d 218, 220 

(1st Cir. 1996) (stating that "when a lower court produces a

comprehensive, well-reasoned decision, an appellate court should

refrain from writing at length to no other end than to hear its

own words resonate"); In re San Juan Dupont Plaza Hotel Fire 

Litig., 989 F.2d 36, 38 (1st Cir. 1993) (similar). Accordingly, 

we affirm the judgment for substantially the reasons elucidated

in the district court's orders, adding a few brief comments.

1. It is important to bear in mind that this appeal 1.

tests only the denial of PR-DOJ's motion for reconsideration. In

considering such an assignment of error, we will not reverse

unless the record displays a palpable abuse of discretion. See 

Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 

220, 227 (1st Cir. 1994); Fragoso v. Lopez, 991 F.2d 878, 888 

(1st Cir. 1993). We detect none here.

2. PR-DOJ vigorously (if belatedly) contests the 2.

district court's jurisdiction, and urges that the court should

have reconsidered because the removed action should have been

remanded to the commonwealth courts. We need not address the

obvious question anent the existence of appellate jurisdiction

vis- -vis the denial of a motion to remand, see generally 

3

Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336 350-52 

(1976), inasmuch as the appellant's attacks on the district

court's subject matter jurisdiction fail.

A federal court appropriately exercises subject matter

jurisdiction over state court claims upon removal when the claims

are sufficiently "related" to bankruptcy proceedings. See 28 

U.S.C. 1334, 1452 (1994). "[T]he test for determining whether

a civil proceeding is related to bankruptcy is whether the

outcome of that proceeding could conceivably have any effect on

the estate being administered in bankruptcy." In re G.S.F. 

Corp., 938 F.2d 1467, 1475 (1st Cir. 1991) (quoting Pacor v. 

Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). In this case, the 

district court properly exercised jurisdiction over the claims to

compel the return of the seized property because those claims had

a direct and significant effect on the bankruptcy estate.2 See 

United States v. Star Rte. Box 1328, 137 B.R. 802, 805 (D. Or. 

1992) (holding that a case involving federal civil forfeitures

satisfied the relatedness test). Moreover, the claims were

properly withdrawn by the district court from the bankruptcy

court. See 28 U.S.C. 157(d) (1994). 

3. PR-DOJ offers as an additional reason for 3.
 

2To be sure, PR-DOJ emphasizes that the issues concerning
the seized property depend primarily on Puerto Rico forfeiture
law. But "federal courts are not lightly to relinquish
jurisdiction, and . . . even a difficult issue of state law or
parallel pending state litigation is not automatically a warrant
to abstain." Lundborg v. Phoenix Leasing, Inc., 91 F.3d 265, 272 
(1st Cir. 1996). Thus, the district court did not abuse its
considerable discretion by deeming itself competent to determine
straightforward issues of Puerto Rico law.

4

reconsideration its complaint that the district court entered

summary judgment without offering it an opportunity to mount an

opposition. This is sheer persiflage. The record reveals that

PR-DOJ had ample opportunity to oppose the summary judgment

motions, and instead neglected to do so.3 What is more, the

district court did not grant the motions merely because they were

unopposed; rather, the court, following settled precedent, see, 

e.g., Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991); 

Mendez v. Banco Popular, 900 F.2d 4, 7 (1st Cir. 1990), 

considered the motions on their merits, in light of the record as

constituted, and determined that judgment in favor of the movants

was legally appropriate.

The sockdolager, of course, is that PR-DOJ, even now,

has not suggested any credible reason why Bank of Boston and/or

Northwestern Trading are not entitled to judgment. The claimants

are parties possessing cognizable interests in the seized

property. See P.R. Laws Ann. tit. 34, 1723 (1991). The 

criminal proceedings fizzled out, and under the law of Puerto

Rico, acquittal on criminal charges renders a governmental

seizure of the acquitted person's property invalid. See Carlo 

del Toro v. Secretario de Justicia, 7 P.R. Off. Trans. 392, 398- 

99 (1982). In the face of clear precedent, the district court

 

3PR-DOJ's lament that it was lulled into a false sense of
security by a stay granted earlier in the proceedings by the
bankruptcy court holds little water. Given the record in this
case, no reasonable lawyer would have concluded that the stay
endured after the district court withdrew the reference and
assumed jurisdiction.

5

acted appropriately in noticing the acquittals and striking down

the seizures.

We need go no further. Concluding, as we do, that the

instant appeal is entirely without merit, we summarily affirm.

Affirmed. Affirmed. 

6